IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL FRIED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 24-305-GBW ) |
| ADAPTHEALTH, LLC, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 17th day of April 2025:

Plaintiff Michael Fried ("Plaintiff" or "Fried") brings this action against Defendant AdaptHealth, LLC ("Defendant" or "AdaptHealth"). Presently before the Court is Defendant's Motion to Dismiss (D.I. 14) ("the Motion"). The Motion is fully briefed. (D.I. 24; D.I. 25). For the reasons explained below, the Court DENIES Defendant's Motion.

## I.     BACKGROUND[1]

AdaptHealth is a Delaware limited liability company that provides home medical supplies and equipment. (D.I. 1 ¶ 2). In 2021, AdaptHealth hired Fried to serve as the President of Community Surgical Supply of Toms River, LLC ("CSS").[2] (*Id.* ¶ 7). On December 30, 2021, AdaptHealth and Fried entered into an employment agreement ("the Employment Agreement."). (*Id.* ¶ 6; *see also* D.I. 1, Ex. A). The Employment Agreement provides for three potential forms of compensation to Fried: (1) a base salary of $350,000 per year; (2) a bonus based on performance; and (3) incentive compensation. (D.I. 1, Ex. A, §3(a)-(e)). Specifically, the incentive

---

[1] At this stage, the Court accepts the factual assertions in Plaintiff's Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Toms River, LLC is an entity owned by AdaptHealth. (D.I. 1 ¶ 7).

compensation section of the Employment Agreement ("the Incentive Compensation Section") provides:

> (e) <u>Incentive Compensation</u>. The Employee shall receive "<u>Incentive Compensation</u>" based on CSS exceeding certain annual net revenue thresholds in calendar year 2022. Specifically, the Employee shall be eligible to receive
>
>> (i) 10% of net revenue from operations in New York and New Jersey that results in infusion pharmacy gross margin in excess of $6,500,000 for CSS in calendar year 2022, and
>>
>> (ii) 10% of net revenue in excess of $7,800,000 from the Ohio Veteran's Administration contract number 36C25021D0015 for CSS in calendar year 2022.
>
> For purposes herein, gross margin means net revenue less cost of goods sold.
>
> [. . .]

(*Id.* §3(e)).[3]

In October 2022, Fried and AdaptHealth decided to terminate the Employment Agreement. To memorialize the termination, on October 14, 2022, the parties executed a severance agreement and general release ("the Severance Agreement"). (D.I. 1 ¶ 9; *see also* D.I. 1, Ex. B). The Severance Agreement provides that Fried would receive: (1) severance pay to total his gross anticipated salary of $350,000; (2) a bonus payment of $175,000; and (3) the incentive compensation provided for in the Employment Agreement. (D.I. 1, Ex. B §7). The incentive compensation section of the Severance Agreement states that "[AdaptHealth] acknowledges that CSS . . . expects to achieve the annual net revenue threshold set forth in Section 3(e)(i) of the Employment Agreement for calendar year 2022 . . . [and] will pay Employee the Incentive

---

[3]     The Court will refer to the first part of the Incentive Compensations Section as "Section 3(e)(i)" and the latter part as "Section 3(e)(ii)."

Compensation (as defined in and determined pursuant to the Employment Agreement)." (*Id.* §7(c)). As a result, pursuant to Section 3(e)(i) of the Employment Agreement, AdaptHealth paid Fried $249,416.00 in incentive compensation. (D.I. 1 ¶ 11). AdaptHealth calculated Fried's incentive compensation by taking 10% of the approximate "$2.5 million of net revenue that resulted in gross margin in excess of $6.5 million." (D.I. 14 at 2). Fried, however, alleges he should have received "$1,663,234.00" in incentive compensation based on CSS's financial performance, as reflected in AdaptHealth's audited financials. (*Id.*). Fried calculated this figure by taking 10% of *all* net revenue because CSS's gross margin exceeded $6.5 million. Consequently, Fried demands an additional "$1,413,908.00" in incentive compensation from AdaptHealth. (*Id.*).

## II.   PROCEDURAL POSTURE

On March 7, 2024, Plaintiff filed a Complaint (D.I. 1) ("the Complaint"). In the Complaint, Plaintiff asserts two causes of action: (1) breach of contract, and (2) violation of the Delaware Wage Payment and Collection Act. (D.I. 1). Plaintiff requests an award of damages in an amount no less than $1,413,908.00, attorneys' fees, costs, and expenses, and all other relief the Court deems just and proper. (*Id.*). On May 6, 2024, Defendant filed a Motion to Dismiss for Failure to State a Claim (D.I. 14) ("the Motion"). On June 5, 2024, Plaintiff filed an Answering Brief in Opposition to the Motion (D.I. 24). On June 20, 2024, Defendant filed a Reply Brief in support of its Motion (D.I. 25).

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a complaint must be dismissed if it "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *E.I. DuPont*

3

*de Nemours & Co. v. Great Lakes Chem. Corp.*, 383 F. Supp. 2d 642, 644-45 (D. Del. 2005). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, the Court must construe all allegations and facts in the light most favorable to the non-movant plaintiff and resolve all reasonable inferences in the plaintiff's favor. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept "bald assertions," "unsupported conclusions," or "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, at n.8 (3d Cir. 1997) (internal quotation marks omitted). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).

### B. <u>Breach of Contract</u>

To successfully state a claim for breach of contract, under Delaware law, a plaintiff must allege: "(1) the existence of a contract, whether express or implied; (2) breach of one or more of the contract's obligations; and (3) damages resulting from the breach." *Geico Gen. Ins. Co. v.*

4

*Green*, 308 A.3d 132, 140 (Del. 2022). Under Delaware law, "a motion to dismiss is a proper framework for determining the meaning of contract language" because "the proper interpretation of language in a contract is a question of law." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006). If, however, the contract language is ambiguous, the Court may not resolve the ambiguity on a motion to dismiss. *VLIW Tech., L.L.C., v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003). That is because "ambiguous terms are interpreted by the jury, unambiguous ones by the court." *Ram Constr. Co. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir. 1984). "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more meanings." *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (Del. 1996) (quotation marks and citation omitted). As such, "[d]ismissal, pursuant to Rule 12(b)(6), is proper only if the defendant[']s] interpretation is the *only* reasonable construction as a matter of law." *VLIW Tech., L.L.C.*, 840 A.2d at 615.

## IV. DISCUSSION

Plaintiff has plausibly alleged the existence of a valid, enforceable Employment Agreement and Severance Agreement; and that damages would be owed to him if either contract was breached. (*See* D.I. 1 at ¶¶ 6-11).[4] Therefore, Defendant's Motion to Dismiss turns on whether Plaintiff has plausibly alleged that Defendant breached Section 3(e)(i) by failing to pay him 10% of all net revenue from the relevant CSS operations in New York and New Jersey for calendar year 2022.

Defendant asserts that Plaintiff has failed to plausibly allege a breach of the Employment Agreement and Severance Agreement because no "plausible interpretation of the plain language of Section 3(e)(i) support[s] Plaintiff's argument that he was entitled to 10% of *all* net revenue

---

[4] Defendant does not dispute that Plaintiff has successfully alleged these elements of his breach of contract claim.

earned by CSS, back to the first dollar." (D.I. 25 at 2). In contrast, Plaintiff contends that the Section 3(e)(i) is ambiguous and that, under his reasonable interpretation, he has successfully alleged a claim for a breach of contract. (D.I. 24 at 2; *id.* at 9). The Court agrees with Plaintiff.

Plaintiff interprets Section 3(e)(i) as providing a $6.5 million threshold which, if met, entitles him to compensation on *all* net revenue from the relevant businesses earned either before or after the $6.5 million mark. (*See* D.I. 24 at 5). Defendant, however, asserts that Plaintiff's interpretation is patently unreasonable because it (1) ignores the plain language of the contract; (2) renders superfluous the language "results in" and "in excess of;" (3) is inconsistent with the other incentive payment provision, Section 3(e)(ii); and (4) is implausible in light of Plaintiff's base salary. (D.I. 14 at 6-9). Defendant asserts that the only reasonable interpretation of Section 3(e)(i) is that AdaptHealth was required to pay Plaintiff "incentive compensation on revenues that are *in excess of* the amount of revenue necessary to reach $6.5 million in gross margin, not the total revenue." (D.I. 14 at 7; *see also* D.I. 14 at 3 ("The 10% bonus is only paid on revenue that is in excess of the threshold amount—not all revenue once the threshold is met.")). The Court, however, disagrees with Defendant and finds Plaintiff's interpretation to be reasonable.

First, Plaintiff's interpretation does not ignore the plain language of Section 3(e)(i). Section 3(e)(i) provides that Fried was eligible to receive "10% of *net revenue* from operations in New York and New Jersey *that results in* infusion pharmacy gross margin *in excess of* $6,500,000 for CSS in calendar year 2022." (D.I. 1, Ex. A, §3(e)(i) (emphasis added)). Reading this provision from left to right, it is reasonable to conclude that the "incentive calculation would be based only on net revenue generated by the New York/New Jersey operations after CSS's infusion pharmacy profits reached $6.5 million." (D.I. 24 at 4). As such, Plaintiff's interpretation is rooted in the plain language of the contract.

6

Second, Plaintiff's interpretation does not render superfluous the language "results in" or "in excess of." (*See* D.I. 14 at 8). Rather, "those words are integral to Plaintiff's cause of action because they identify the event entitling Plaintiff to additional compensation" – i.e., they indicate the "condition precedent to Plaintiff earning the incentive: infusion pharmacy profits exceeding $6.5 million." (D.I. 24 at 6). The Court acknowledges that, under Delaware law, "[c]onditions precedent are not favored in contract interpretation because of their tendency to work a forfeiture," and, thus, parties must use "unambiguous, express language to create a condition precedent." *Thomas v. Headlands Tech Principal Holdings, L.P.*, C.A. No. 19C-11-041, 2020 WL 5946962, 2020 Del. Super. LEXIS 2832, at *14-15 (Del. Super Ct. Sept. 22, 2020) (quotation marks and citations omitted). The Court here, however, finds that the instant terms, "results in" and "in excess of," are commonly used to set a required outcome or threshold. *See, for example, Casey Employment Servs. v. Dali*, Case No. 160-1993, 1993 Del. LEXIS 425, at *10-11 (Del. Nov. 18, 1993) (holding that a contract clause containing the word "exceeding" expresses "an absolute condition precedent."). Indeed, this language can be reasonably interpreted to describe "an act or event, other than a lapse of time, that must exist or occur before a duty to" pay Fried incentive compensation arises. *See AES P.R., L.P. v. Alstom Power, Inc.*, 429 F. Supp. 2d 713, 717 (D. Del. 2006) (describing a condition precedent) (quotation marks and citation omitted). Thus, Plaintiff's interpretation does not ignore these words.

Third, Defendant contends that Plaintiff's interpretation of Section 3(e)(i) is incompatible with Section 3(e)(ii). (*See* D.I. 25 at 9 (arguing that "it is clear that both provisions were intended to calculate the incentive compensation based only on the net revenue that was earn[ed] after the threshold was met.")). The Court, however, does not find that Plaintiff's interpretation of Section 3(e)(i) is inconsistent with Section 3(e)(ii). Instead, the Court finds that the differences

between the sections supports Plaintiff's argument that the provisions have different meanings. (*See* D.I. 24 at 7 (Plaintiff arguing that "[t]he fact that Section 3(e)(ii) is written in different language when compared to Section 3(e)(i) proves that the two are not to be interpreted similarly.")). Illustratively, unlike Section 3(e)(i), Section 3(e)(ii) does *not* contain the language "that results in infusion pharmacy gross margin." (D.I. 1, Ex. A, §3(e)). Therefore, it is reasonable to conclude that "Section 3(e)(ii) involves a simpler, one-step process that entitles Plaintiff to 10% of net revenue over $7.8 million from a certain contract without any consideration of gross margin." (D.I. 24 at 7). Further, it is an axiomatic facet of contract interpretation to "presume that drafters who choose different words have intended to implement different concepts." *Argyle Solutions, Inc. v. Prof'l Sys. Corp.*, C.A. No. 4382-VCN, 2009 WL 1204351, 2009 Del. Ch. LEXIS 63, at *9 (Del. Ch. May 4, 2009); *see also Williams Cos. v. Energy Transfer LP*, C.A. No. 12168-VCG, 2020 Del Ch. LEXIS 229, *29, at n. 123 (Del. Ch. July 2, 2020) ("One principle of contract interpretation in Delaware is that the use of different language in different sections of a contract suggests the difference is intentional."). Accordingly, the Court is not persuaded by Defendant's argument that Section 3(e)(i) and Section 3(e)(ii) should be interpreted identically.

Fourth, Defendant contends Plaintiff's interpretation defies common sense because it is "simply implausible that AdaptHealth would agree to substantially increase its costs for these operations by paying 10% of all revenue to Plaintiff, in addition to the compensation Plaintiff was already receiving." (D.I. 14 at 9). Again, the Court disagrees with Defendant. Although it may be unusual, it is not implausible that a company would decide to compensate an executive employee, like Fried, in this manner. *See, for example, Behren v. Warren, Gorham & Lamont, Inc., Inc.*, 873 N.Y.S.2d 509, (N.Y. Sup. Ct. 2004) (discussing an employment agreement that

provided certain employees with "royalties of 10 percent of the gross revenue"). Importantly, the the Employment Agreement provided Fried with other, substantial forms of compensation. In addition to the incentive compensation, Fried was guaranteed a base salary of $350,000 and was provided with a separate bonus based upon performance criteria. (D.I. 1, Ex. A, § 3(a)-(e); *see also* D.I. 14 at 3 (describing Fried's "three tranches of potential compensation")). Therefore, it appears to the Court that AdaptHealth valued Fried's services and compensated him handsomely for his work. Accordingly, Fried's assertion that the Incentive Compensation Section entitles him to an additional $1.4 million, does not defy common sense or the general "spirit" of the Employment Agreement.

Furthermore, at this stage in the proceedings, before discovery, the Court is ill-equipped to assess the "common sense" of the payment scheme. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (Plaintiff is "not required to establish the elements of a *prima facie* case, but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotation marks omitted). Indeed, it could be customary for an employee of Fried's stature, in the relevant industry, to be compensated in this way and in this amount. To survive a motion to dismiss, Plaintiff is required to plead facts that raise "more than a sheer possibility" that Defendant was required to compensate Plaintiff under Plaintiff's interpretation of the Section 3(e)(i). *Iqbal*, 556 U.S. at 678. Plaintiff's reading of Section 3(e)(i) is reasonable and, as such, it is plausible that Defendant's were required to pay him 10% of all net revenue for the relevant CSS operations in New Jersey and New York in 2022.

In summary, the Court finds that Section 3(e)(i) is ambiguous and that Plaintiff's interpretation of it is reasonable. Under this reasonable interpretation, Plaintiff has plausibly alleged that Defendant breached Section 3(e)(i) of the Employment Agreement. As such,

dismissal of Plaintiff's breach of contract claim is improper. *See VLIW Tech., L.L.C.,* 840 A.2d at 615 ("[The Court] cannot choose between two differing reasonable interpretations of ambiguous provisions. Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law.").

## V.  CONCLUSION

For the reasons explained above, the Court DENIES Defendant's Motion to Dismiss (D.I. 14).[5]  It is SO OREDERED.

                                              The Honorable Gregory B. Williams
                                              UNITED STATES DISTRICT JUDGE

---

[5]  Although Defendant asks the Court to dismiss both counts of Plaintiff's Complaint, Defendant has failed to provide arguments for dismissal of Count Two of Plaintiff's Complaint: Violation of Delaware Wage Payment and Collection Act.  (D.I. 1 at 4; D.I. 14 at 9).  Defendant's papers focus only on Plaintiff's Breach of Contract claim.  (*See* D.I. 14 at 6).  Although the Court recognizes there is overlap between the claims, the claims have separate pleading requirements.  The Court will not *sua sponte* raise arguments for dismissal of Count Two.  *See Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th 1371, 1378 (Fed. Cir. 2024) ("It is for the *parties*—not the court—to chart the course of litigation.").  Accordingly, the Court will not dismiss Count Two of Plaintiff's Complaint.